## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
———————————————

GERALD E. VALLEJOS,

      Plaintiff,

vs.                                                          NO. 11-CV-00206 WJ/KBM

LOVELACE MEDICAL CENTER,
CARMEN SMITH-SALAZAR, JOSEPHINE
GOROSPE, SUZETTE HARRIS, JENNIFER
HOLLER, SARAH ATKINSON AND KEVIN
SINCLAIR,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court, *sua sponte*, under rules 6(b) and 12(b)(6) of the

Federal Rules of Civil Procedure. The Court concludes that Vallejos has failed to meet the deadlines

established by the Court and that the amended Complaint fails to state a federal claim upon which

relief can be granted. The Court will dismiss Vallejos's federal claims and remand his state-law

claims to state court.

## BACKGROUND

On February 4, 2011, Plaintiff Gerald E. Vallejos filed in the Second Judicial District Court,

County of Bernalillo, State of New Mexico, as case number CV-2011-01355, a complaint against

Lovelace Medical Center, Smith-Salazar, Gorospe, Harris, Holler, Atkinson and Sinclair. *See* Doc.

1 Ex. A (Doc. 1-1) at 3. Vallejos asserts that "Defendants retaliated against [him] for engaging in

1

protected activities as defined under Title VII Of the Civil Rights Act of 1964[1] (Title VII), and the New Mexico Human Rights Act of 1969[2], and for filing employment discrimination charges 543-2009-00733, 543-2009-01162, and 543-2010-00698 dated 30Nov2010 [sic]" *Id.* On March 8, 2011, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441(b). *See* Doc. 1. On March 15, 2011, the individual Defendants filed a motion to dismiss, which the Court granted on August 10, 2011. *See* Docs. 5 & 18. In its Order, the Court allowed Vallejos fourteen (14) days to amend his Complaint pursuant to the instructions contained in the Order. *See* Doc. 18 at 8. On August 26, 2011, fifteen (15) days after the Order was filed, Vallejos filed his amended Complaint, which the Court then required him to redact. The redacted amended Complaint was filed on September 2, 2011. *See* Doc. 20.

In his amended Complaint, Vallejos argues:

> 1. The adverse action of being terminated from employment I held for 19 years was in violation of Title VII, Civil Rights Act of 1964 . . .
> 2. Violation of Federal laws enforced by the Equal Employment Opportunity Commission, established by Title VII . . . . The laws violated were sexual harassment; Work-place hostility, harassment, and retaliation for engaging in a lawful recognized protected activity, that of filing EEOC charges of sexual harassment, discrimination, and retaliation . . . .
> 3. Violation of employer's Code of Conduct every day, every decision . . . .
> 4. The Vietnam Veterans Era Readjustment Act of 1974 . . . The VVERA prohibited discrimination against Vietnam Veterans.

*Id.* at 2.

Vallejos asserts the following relevant facts: Vallejos "made formal complaints to the Nurse Manager, Sarah Atkinson-Sinclair[3] on 17May09 . . . complaining about unfair, inequitable patient

---

[1] 42 U.S.C. §2000, *et seq.*

[2] N.M. Stat.§ 28-1-1, *et seq.*

[3] She is referred to in the style of the case only as Sarah Atkinson.

2

care assignments, that information on assignment sheets was deliberately misleading."  Doc. 20 at 2.  Around February 2009, Vallejos complained to "the compliance officer, Karen Bootzin, . . . that [he] was denied the right to work by charge nurses Jennifer Holler and Carmen Smith-Salazar . . . [He] was scheduled to work on 3/13/17Nov08 but when [he] arrived at the hospital [he] was told that [he] was not scheduled.  This was false."  *Id.*  He "visited with" Jana Christopher, who is the employee relations manager, and with the human resources director about this event.  *Id.*  He had also written letters to Defendant Lovelace Medical Center upper management, CEO and president in 2008.  *See id.*  In November of 2008, he called the Center's ethics line.  *See id.*  None of these individuals responded to his letters or calls.  *See id.*

In 2008, Defendant Sarah Atkinson-Sinclair became the nurse manager of the 8th floor Sub-Acute Unit and Vallejos's immediate supervisor.  *See id.* at 4.  She "selected all the female charge nurses, did not advertise, [and] did not allow interested nurses from competing for charge nurse positions."  *Id.*  Even after she had been in her position for six months, Atkinson-Sinclair "did not interview [Vallejos] or make any attempt to know [him]."  *Id.*  She talked with Vallejos for the first time after he complained about Defendant Holler.[4]  *See id.*  Defendant Kevin Sinclair, Director Critical Care Unit, supervised Sarah Atkinson-Sinclair; they were married in 2009.  *See id.* ¶ 1, at 3; ¶ 2, at 4.

Defendant Josephine Gorospe defamed and slandered Vallejos.  *See id.* ¶ 5, at 7.  From the date she was assigned to the 8th floor unit, she began touching Vallejos in undescribed ways he found

---

[4]Vallejos filed a sexual harassment complaint against Holler based on the following events: On November 6, 2008, Holler and Smith-Salazar "attempt[ed] to get [Vallejos] to come to work."  Doc. 20 ¶ 3, at 6.  Vallejos was not supposed to work that night, but they insisted that he was scheduled.  *See id.*  Vallejos called the house supervisor and "asked for her to look into it."  *Id.*  The house supervisor then called Vallejos back and told him that he did not need to report to work and that the charge nurse would revise the schedule.  *See id.*

offensive and he "rejected her." *See id.*  The offensive touching stopped November 2008.  *See id.*
In October 2009, Vallejos worked a shift after Gorospe.  *See id.*  He found errors in her work and
reported it to the Nurse Manager.  *See id.*

A male nurse, Kurt Froelich, made offensive remarks to Vallejos while standing behind him.
*See id.* at 8.  The conduct continued until Vallejos "gave him a non-verbal message to stop."  *Id.*
Then from November 2008 until March 2009, another male nurse, James Gonzales, touched Vallejos
in ways that made him uncomfortable - patting his back and squeezing his arms.  *See id.*  Once,
Gonzales grabbed Vallejos's hand, squeezed it, and winked at Vallejos.  *See id.*  In April 2009, he
complained about these acts to Atkinson-Sinclair and received no response from her.  *See id.*

Prior to his complaint about Holler in February 2009, Vallejos received two evaluation
ratings from Atkinson-Sinclair - 3.5 and 3.0- that indicated that he "met the requirements of the job."
*Id.* ¶ 2, at 5.  On December 24, 2008 and on January 12, 2009, Vallejos, in writing, asked Atkinson-
Sinclair to change his employment status from per diem to full time.  *See id.* ¶ 2, at 5.  He repeated
his request to her via telephone.  *See id.*  Atkinson-Sinclair did not respond to his requests.  *See id.*
During this same time, two full-time positions became available in the unit.  *See id.*  Vallejos applied
for those positions but was not hired.  *See id.*  His June 2009 evaluation rated him as a zero.  *Id.* ¶
2, at 5.  He was then placed on seven-months probation.

Some time prior to February 2009, Sinclair offered Vallejos a "$3,500 retention bonus to stay
in the 8th floor step-down unit."  *Id.* ¶ 1, at 3.  Vallejos accepted the offer.  *Id.*  In March 2009, after
complaining about "being denied work after reporting for duty" on the 3rd, 13th and 17th of
November 2008, Vallejos met with Sinclair, Atkinson-Sinclair, and Christopher.  Sinclair asked
Vallejos "how is it [you] can complain about not 'getting enough hours.'"  *Id.* at 3.  Vallejos
explained that it was not that he was not being assigned enough hours but that he was "being turned

away from the job after reporting for work with the explanation from charge nurses Carmen Smith-Salazar and Jennifer Holler that "[he] was not on the schedule."  *Id.* at 3-4.  The meeting was then terminated without any further discussion.  *See id.* at 4.  "Being denied the right to work was retaliation against [Vallejos] by Jennifer Holler, and her colleague Carmen Smith-Salazar for having complained about Jennifer Holler's sexual harassment of" him.  *Id.* at 4.  The discrimination was that someone else was chosen to work instead of Vallejos.  *See id.*  No investigation of the schedule-change events occurred.  *See id.*

On May 17, 2009, Smith-Salazar prepared the nurse assignment sheet.  *See id.* at 4.  She assigned Vallejos four patients but only assigned Loyola Trujillo, RN, two patients.  *See id.*  Although the assignment sheet indicated that Trujillo had three patient rooms, one was actually vacant.  *See id.*  "It was a deliberate attempt to allow Trujillo to work a 12 hr shift with only two patients assigned."  *Id.*  When Vallejos questioned Sinclair about the incident, Sinclair falsely explained that Trujillo had discharged the third patient early in the shift.  *See id.*  On May 24, 2009, Vallejos was accused by Smith-Salazar of "refusing a patient care assignment."  *Id.* at 4; ¶ 4 at 6.  No investigation occurred with regard to this event.  *Id.*  Vallejos was placed on seven-months probation due to this event.  *See id.* ¶ 4, at 6.[5]

On October 7, 2009, Gorospe mocked Vallejos.  *See id.* at 9.  When he told her that he knew she slanders him, she rushed away from him.  *See id.*  On October 8, 2009, the day-charge nurse told Vallejos that one of his patients requested another nurse.  *See id.*  The next day Sinclair told Vallejos that an investigation would occur because of the patient's request and that Vallejos would be suspended for four days pending the investigation.  *See id.*  Sinclair stated that Vallejos had violated

_____

[5]Vallejos states in reference to two events that they resulted in his probation.

5

the New Mexico Nurse Practices Act.  *See id.*  On October 15, 2009, Vallejos was terminated from

his position for "not following instructions" in violation of his seven-months probation that

commenced in June 2009 for "refusing a patient care assignment."  *Id.* at 3.  Vallejos received no

clarification as to what instruction was not followed.  *See id.* at 4.  Following his termination,

Vallejos was not contacted by the New Mexico Board of Nursing regarding his alleged misconduct.

*See id.*

## LEGAL STANDARDS

A.    *Extensions of Time to File.*

Rule 6(b) of the Federal Rules of Civil Procedure states:

(1) *In General*. When an act may or must be done within a specified time, the court
may, for good cause, extend the time:
(A) with or without motion or notice if the court acts, or if a request is made, before
the original time or its extension expires; or
(B) on motion made after the time has expired if the party failed to act because of
excusable neglect.

FED. R. CIV. P. 6(b).  "[A] finding of excusable neglect under Rule 6(b)[ ]requires both a

demonstration of good faith by the parties seeking the enlargement and also it must appear that there

was a reasonable basis for not complying within the specified period."  *In re Four Seasons Sec.*

*Laws Litig.*, 493 F.2d 1288, 1290 (10th Cir. 1974).  "[I]t is well established that inadvertence,

ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for

purposes of Rule 6(b)."  *Quigley v. Rosenthal*, 427 F.3d 1232, 1238 (10th Cir. 2005).  Whether to

allow or refuse to consider an untimely filed document is in the court's discretion.  *See id.*

## B.    Dismissal For Failure to State a Claim for Relief

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss for failure to state a

claim.  The court may dismiss a complaint *sua sponte* under FED. R. CIV. P. 12(b)(6) for failure to

state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), *quoting McKinney v. Okla., Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991). "The legal sufficiency of a complaint is a question of law." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). The court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *See Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs of Arapahoe, Colo.*, 633 F.3d 1022, 1025 (10th Cir. 2011). The court only considers the allegations contained in the complaint and not in other documents or information. *See Davis ex re. Davis v. United States*, 343 F.3d 1282, 1295 (10th Cir. 2002). To survive a 12(b)(6) motion to dismiss, a plaintiff must allege "enough factual matter, taken as true, to make his 'claim to relief . . . plausible on its face.'" *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S.___, 129 S. Ct. 1937, 1949 (2009), *citing Twombly*, 550 U.S. at 556. The Court must "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). The complaint need not recite detailed factual allegations, but the factual allegations must be sufficient to raise the right to relief above a speculative level. *See Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009). Only when a complaint states a plausible claim for relief does it survive a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1950. In reviewing a plaintiff's pro se complaint, the court applies the same legal standards applicable to pleadings drafted by counsel but liberally construes the allegations. *See Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992).

## DISCUSSION

In the letter included with his amended Complaint, Vallejos acknowledges that he was filing the document after the deadline set forth in the Court Order had passed.  He does not ask for an extension of time to file but instead asserts that he does not have the "resources, automobile, computer, or financial capability to have been able to complete all administrative requirements of this complaint/amended complaint" and that he must "rely on the local Taylor Ranch library for computer use."  Doc. 20 at 1.  The Court considers his statement as a request for an extension of time to file his amended Complaint.  Such an explanation, however, was made after the deadline for filing passed and does not qualify as good cause because there is no requirement that a pro se litigant type his documents:  "A paper presented for filing must be . . . typewritten or printed . . ."  D.N.M.LR-Civ 10.1.   Additionally, there is no requirement that a litigant hand-deliver his documents to the court.  The court is capable of filing, and does file, mailed documents.  All litigants must follow court orders and the federal and local rules of civil procedure.  A plaintiff's pro-se status does not entitle him to application of different procedural rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir.2002).  Vallejos has not complied with the rules of civil procedure and did not meet the permitted filing requirements of the Memorandum Order and Opinion dated August 10, 2011 (Doc. 18) that allowed him to file an amended complaint within certain time constraints.

Even if Vallejos had met the timing requirements set forth in the August 10, 2011 order, however, his federal claims in the amended Complaint must be dismissed because the Complaint does not state a federal claim upon which relief may be granted.  The order of August 10, 2011 stated that Vallejos's claim under the New Mexico Human Rights Act was dismissed for failure to exhaust remedies.  *See* Doc. 18 at 5.  It clarified that Title VII claims only apply to employers or employees in their official capacities and stated that, because Lovelace Medical Center was named

8

as a Defendant, it was inappropriate to name the individual supervisors and non-supervisory employees as Defendants. *Id.* at 6. The Order explained that Lovelace Medical Center was the only remaining Defendant, stated that any amended Complaint should reflect this, and provided Vallejos with an opportunity to amend his Complaint following the instructions in the Order and articulating specific facts to state a claim upon which relief can be granted. Vallejos's amended Complaint fails to follow the instructions set forth in the August 10, 2011 Order. He did delete his New Mexico Human Rights Acts claims, but he did not remove the individual Defendants, in their official capacities, as Defendants from his Title VII claims.

As noted above, in making its determination on whether the amended Complaint states a claim upon which relief can be granted, the Court only considers the facts presented in the amended Complaint and construes the facts, but not the legal conclusions, as true.

Under Title VII, 42 U.S.C. 2000e-2(a)(1), it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." To establish a prima-facie case of gender discrimination, a plaintiff must show: (1) that he belonged to a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position at issue; and (4) that he was treated less favorably than his similarly situated female counterparts. *See Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1380 (10th Cir. 1994).[6] The meaning of "[a]dverse employment action includes significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

---

[6]The Tenth Circuit has noted that a prima-facie case may not require a "similarly situated person" comparison at all. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th 2004) ("[Title VII] prohibits only intentional discrimination *based upon* an employee's protected class characteristics.").

causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (quotation marks and citation omitted).  However, a "mere inconvenience or an alteration of job responsibilities" does not constitute an adverse employment action.  *Id.* at 1203 (quotation marks and citation omitted).  Similarly a schedule change, without more, is not considered an adverse employment action.

Vallejos has presented nothing to demonstrate that a male nurse is a protected class.  Further, he has not alleged any facts indicating that any discriminatory acts were taken against him because of his gender.  Vallejos contends that he was "denied the right to work" because he was scheduled to work on the 3rd, 13th and 17th of November 2008, but when he arrived for work on those days he was told he was not scheduled.  *See* Doc. 20 at 2.  He argues that they "deliberately, with pre-meditation and malice removed" him from the work schedule.  *Id.* at 4.  But Vallejos asserts that he was discriminated against in the scheduling not because he was male but because someone else was assigned to work those shifts.  *See id.*  He never states whether the replacement workers were male or female.  Also, Vallejos argues the schedule was changed three times during one month only; it does not appear to be a continuing event.  The schedule changes are not an adverse employment action and certainly do not constitute the denial of the right to work.

With regard to the hiring of charge nurses by Atkinson-Sinclair, again there is no indication of gender discrimination.  Vallejos contends that Atkinson-Sinclair "selected all the female charge nurses, did not advertise, [and] did not allow interested nurses from competing for charge nurse positions."  *Id.*  Even if Vallejos could show that Atkinson-Sinclair's decisions constituted adverse employment action, he does not assert facts to indicate that the decisions were made based on gender.  He limits his complaint to "interested nurses."  *See id.*  Vallejos has not provided any facts to indicate that he and/or other males were in the group from which the selection was made but was

10

consistently denied a promotion.  He does not assert that interested *male* nurses were prohibited from competing.  Ignoring Vallejos's request for a change in position, similarly, does not appear to be based on gender.  Vallejos's contention that he was discriminated against due to his gender is speculation; he has provided no facts to support his allegations.  The Court need not consider the other elements of the prima-facie case.  Vallejos's gender-discrimination claims will be dismissed.

Vallejos also alleges sexual harassment, hostile work environment and general harassment. "Sexual harassment is actionable under a hostile work environment theory when the harassing conduct is 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.'" *Lockard v. Pizza Hut, Inc*., 162 F.3d 1062, 1071 (10th Cir. 1998), *quoting Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).  To make a claim of sex discrimination based on a hostile work environment "a plaintiff must show (1) that [he] was discriminated against because of h[is] sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of h[is] employment and created an abusive working environment." *Medina v. Income Support Div.*, 413 F.3d 1131, 1134 (10th Cir. 2005).  The harassing "conduct must be both objectively and subjectively abusive." *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1071 (10th Cir. 1998).  Whether an environment is hostile or abusive is determined by looking at the totality of the circumstances, including the frequency of the discriminatory conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct interferes unreasonably with the employee's job performance, and the context of the conduct's occurrence. *See Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1413 (10th Cir. 1997).  "The mere utterance of a statement which engenders offensive feelings in an employee would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." *Id.* (quotation marks and citation omitted).

11

In addition to establishing the hostile-work-environment elements, a plaintiff must also identify an evidentiary basis for holding the employer liable under Title VII. *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). "[A]n employer is not automatically liable for harassment by a supervisor who creates the requisite degree of discrimination." *Faragher v. City of Boca Raton*, 524 U.S. 775, 804 (1998) (quotation omitted). An employer is vicariously liable if a supervisor takes a tangible employment action against the victimized employee. *See id.* at 808. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "An employer is not[, however,] strictly liable for all harassment of which it actually or constructively knew; it may discharge its obligation by taking appropriate remedial or preventative action." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 676 (10th Cir. 1998). "An employer is absolved of liability for acts of harassment by its employees if it undertakes remedial and preventative action 'reasonably calculated to end the harassment.'" *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1310 (10th Cir. 2005), *quoting Adler*, 144 F.3d at 676. Reasonable remedial responses may include "prompt investigation of the allegations, proactive solicitation of complaints, scheduling changes and transfers, oral or written warnings to refrain from harassing conduct, reprimands, and warnings that future misconduct could result in progressive discipline, including suspension and termination." *Adler*, 144 F.3d at 676.

> Because an employer is only potentially liable for negligence in remedying and preventing harassment of which it negligently failed to discover, courts must make two inquiries: first into the employer's actual or constructive knowledge of harassment, and second, into the adequacy of the employer's remedial and preventative responses to any actually or constructively known harassment. We have held that actual knowledge will be demonstrable in most cases where the plaintiff has reported harassment to management-level employees. When a management-level

12

> employee has not been notified, this court applies what amounts to a negligence
> standard: highly pervasive harassment should, in the exercise of reasonable care, be
> discovered by management-level employees.

*Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1147 (10th Cir. 2008) (citations, quotations, and brackets omitted).

Vallejos asserts several sexual-harassment claims, with the first claim involving Holler.  As previously noted, Vallejos contends that, on November 6, 2008, Holler and Smith-Salazar "attemp[ed] to get [Vallejos] to come to work." Doc. 20, ¶ 3 at 6.  Vallejos was not supposed to work that night, but they insisted that he was scheduled.  *See id.*  Vallejos called the house supervisor and "asked for her to look into it."  *Id.*  The house supervisor then called Vallejos back and told him that he did not need to report to work and that the charge nurse would revised the schedule.  *See id.*  There is nothing to indicate that this event was in any way based on Vallejos's sex or would constitute harassment, sexual or otherwise.

Vallejos also argues that he was sexually harassed by Gorospe.  He does not state when she began working in his unit, but he states that she began touching him in an undescribed way that he found offensive.  *See id.* ¶ 5 at 7.  He rejected her and the touching stopped in early November 2008. *Id.*  While the events appear to based on Vallejos's sex, no facts describe the severity or pervasiveness of the acts or whether it altered the terms or conditions of his employment.  And, no facts indicate that he ever contacted his supervisors about Gorospe's acts or that Lovelace Medical Center otherwise knew of the sexual harassment.

Vallejos contends that he was sexually harassed by a male nurse, Kurt Froelich, who made undescribed offensive remarks to Vallejos  from November 2008 through March 2009.  *See id.* at 8. The conduct stopped when Vallejos non-verbally told Froelich to stop.  *See id.*  There is nothing to indicate that Froelich's acts were sexual in nature or based on Vallejos's sex.  More importantly,

Vallejos does not describe the severity or pervasiveness of the conduct to analyze its effects on the terms and conditions of his employment.  And Vallejos does not indicate that he reported this conduct to any supervisor or manager or that there was any reason for Lovelace Medical Center to know these acts were occurring.  Lovelace Medical Center cannot be held liable for these acts.

Another male nurse, James Gonzales, also would touch Vallejos in ways that made Vallejos uncomfortable.  The conduct stopped in March of 2009.  Vallejos did not report the conduct until after it stopped.  He reported it to Atkinson-Sinclair and she did not respond to the complaint.

With the exception of the acts by Gonzales, Vallejos has not provided any facts to indicate that Lovelace Medical Center knew or should have known about any sexual harassment and failed to act.  With regard to Gonzales, although Vallejos did complain to his supervisor, he complained after the conduct had already stopped.  The facts presented by Vallejos do not indicate that further action by Lovelace Medical Center was required.  He does not state a valid claim for sexual harassment.

Vallejos additionally claims that he was harassed generally.  However, none of the facts demonstrate any conduct that entitles him to relief under a federal statute.  In his amended Complaint, Vallejos asserts that "[t]he employer, Lovelace Medical Center, was made aware of my complaints of being harassed, And treated with hostility of being slandered."  Doc. 20 at 1.  He offers a note to Defendant Atkinson-Sinclair as evidence of the harassment.  *See id.*  The note, dated May 18, 2009 and directed to "Nurse Mgr" states only: "assignment sheet read 7-8-10 for (illegible) no patient assigned to room 7.  Loyola actually had 2 pts till about 0330 AM then received a transfer.  I had 4 pts; 1 of these patients required much attention in room 4.  This practice of placing

room numbers on the assignment sheet with the room vacant has happened before.  Is this fair."[7]
As another example of harassment, Vallejos contends that, in 2008, Smith-Salazar harassed him by
denying him work on November 3, 13 and 17.  *See id.* ¶ 4, at 6.  He asserts that "as harassment of"
him, Smith-Salazar made patient-care assignments and ignored information provided by him without
consideration of the patient's safety and welfare.  *Id.* ¶ 4, at 7.  Vallejos has provided nothing to
demonstrate how patient case assignments or decisions with regard to patient care can be considered
actionable harassment against him.  The Court acts only to prevent unlawful employment practices,
it does not act as a "super personnel department" second guessing employers' business decisions.
*See Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs*, 165 F.3d 1321, 1330
(10th Cir. 1999).

   As another example of harassment, Vallejos states that, on October 7, 2009, Gorospe mocked
Vallejos.  *Id.* at 9.  He advised her that he was aware that she had made slanderous remarks about
him to Vincent Beaulieu, another RN, and she hurried away.  *Id.*  There may be some personality
conflicts among the staff of Lovelace Medical Center, but those are not relevant to this case because
"Title VII . . . does not set forth a general civility code for the American workplace."  *Burlington
N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks and citation omitted).
Vallejos's claims of sexual harassment, hostile work environment and general harassment are not
actionable.  His dissatisfaction with patient assignments does not evidence harassment or hostile

---

[7]Exhibit C was attached to the original amended Complaint filed by Vallejos that the Court
ordered to be redacted.  Because the Court believes that failure to attach the exhibits was not an
intentional error by Vallejos, and because the Court construes liberally documents filed by pro-se
litigants, it will consider the text of this exhibit in making its determination, despite it not being
attached to the redacted copy of the amended Complaint.

work environment.[8]

Vallejos additionally contends that he was retaliated against. To establish a prima-facie case of retaliation under Title VII, a plaintiff must show that "(1) [he] engaged in protected opposition to discrimination; (2) [he] suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between [his] opposition and the employer's adverse action." *Williams v. W.D. Sports, N.M., Inc*., 497 F.3d 1079, 1086 (10th Cir. 2007) (quotation marks and citations omitted). An "adverse action" occurs where the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 1087. Vallejos contends that "[b]eing denied the right to work was retaliation against" him for having complained about "Holler's sexual harassment" of him. *See* Doc. 20 at 4. Vallejos has not shown, however, that any sexual harassment by Holler occurred. Because there was no sexual harassment, he could not have engaged in a protected activity and the elements for retaliation are not met.

In his amended Complaint, Vallejos attempts to bring a new claim under the Vietnam Veterans Era Readjustment Act of 1974, but does not cite to any specific facts to show that this Act was violated (other than inferring that he was a veteran of the Vietnam war) or that he was discriminated against because he was a Vietnam veteran. *See* Doc. 20 at 2. Vallejos may also now be trying to bring state-law claims against some of the individual Defendants based on slander or

_____

[8]Although Vallejos states he was terminated in violation of Title VII, he asserts few facts regarding his termination and, even then, does not relate the facts to discrimination. He merely sets forth the reason Lovelace Medical Center gave for terminating him. Vallejos briefly comments that, on October 6, 2009, a patient to whom Robert Farris, a male RN, was assigned requested a different nurse and no action was taken against Farris. *See* Doc. 20 at 9. Vallejos does not make any comparison of this event other than to indicate they were both males whose patient asked for a different nurse. This assertion does not support an argument for discrimination or sexual harassment, hostile workplace, general harassment or retaliation relating to his termination.

defamation, or other harassment.  *See id.* ¶¶ 2-5, at 6-9.  Supplemental jurisdiction[9] is the discretionary power of a federal court to hear all claims which arise out of the same "common nucleus of operative fact" as one "case" that a plaintiff would normally be expected to try in a single proceeding.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725-26 (1966).  Once "the bases for federal subject matter jurisdiction have been extinguished[,] . . . the district court may decline to exercise continuing 'pendent' or supplemental jurisdiction over [the] plaintiff's state claims." *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998).  The Court declines to exercise supplemental jurisdiction over Vallejos's new state-law claims and will remand the case to state court.

## CONCLUSION

Because Vallejos's amended Complaint does not state a cognizable federal claim upon which relief can be granted, the federal claims will be dismissed and the state-law claims will be remanded to state court.

**IT IS THEREFORE ORDERED** that Plaintiff Vallejos's federal claims are dismissed with prejudice and that his state-law claims are remanded to state court.

_____

UNITED STATES DISTRICT JUDGE

---

[9]28 U.S.C. § 1367 codified the doctrine of pendent jurisdiction using the term supplemental jurisdiction.  *See* 28 U.S.C. § 1367, commentary on 1988 revision.